3 313
46 344

SAMUEL PAXSON et ux. , v. The Administrators of EDWARD W. POTTS, deceased.

That the real and personal estate are united together by the testator in the residuary clause, is not such a blending of them as to constitute one fund, and charge the land with the payment of legacies, except where there was no previous devise of real estate.

The circumstance that the devisees are also executors of the will, is not *of itself* sufficient to charge the land with the payment of legacies.

Where a legacy coupled with a devise of real estate, is given to the widow in lieu of dower, her acceptance of the provision will not create an equity in her favor to charge her legacy on the land against other devisees.

BILL filed March sixteenth, eighteen hundred and thirty-two. The bill states, that John Potts, deceased, was in his life time, and at the time of his death, possessed of a large personal estate, and was also seized and possessed in fee simple of a valuable real estate.

That on the twenty-eighth day of June, A. D. eighteen hundred and twenty-six, the said John Potts made and published his last will and testament, in due form of law to pass real estate, and therein and thereby disposed of his said estate as follows, to wit :—

"*Imprimis.* It is my will that all my just debts and funeral expenses be paid by my executors as soon as conveniently may be after my decease.

"*2d Item.* I give and bequeath to my dearly beloved wife Catharine R. Potts, and to her heirs and assigns for ever, in lieu of her right of dower, and every other claim which she may have against my estate, the following described property and sum of money, to wit : My house and lot, situate on Wood-street, in the town of Burlington, in the state of New-Jersey ; also a part of the furniture of the house I now occupy in the city of Trenton, to wit, two feather beds with bedding for the same, two bedsteads and two sets of curtains belonging thereto, three carpets, two looking-glasses, twenty-four chairs, two pair of brass andirons, shovels and tongs, one sideboard, one pair of knife-cases,

40

one pair of card-tables, one breakfast and one dining table, one sofa, two mahogany bureaus, the whole of the china and glass ware now in use, and the set of plate, together with the full sum of three thousand and five hundred dollars; to be paid by my executors as follows; five hundred dollars thereof six months after my decease, and three thousand dollars eighteen months after that period, to wit, twelve months after the first payment.

"*3d Item.* I give and bequeath, and it is my will that one half part of all money which may accrue to me from the now unsettled estate of my father, Richard Potts, esquire, deceased, be put at interest for the benefit of my sister, Elizabeth Coxe, and that one other moiety thereof be paid to my niece, Rebecca Coxe, to whom also, after the decease of her mother Elizabeth, I give and bequeath the first moiety of the said money, be it more or less.

"*4th Item.* To my two sons, John B. Potts and Edward W. Potts, of the state of Louisiana, and to their heirs and assigns for ever, I do give and bequeath the whole of my real and personal estate, excepting only the portions mentioned in the second and third items of this my will; to be equally divided between them at such time as they or either of them shall think it his or their interest to divide the same."

The testator appointed his two sons, John B. Potts and Edward W. Potts, executors of his said will, and died on the third day of November, A. D. eighteen hundred and twenty-six. John B. Potts, one of the executors, died in August, eighteen hundred and twenty-seven, leaving Edward W. Potts, the other executor surviving; who, on the eighteenth day of November, A. D. eighteen hundred and twenty-six, proved the said will, and took upon himself the execution thereof.

The bill further states, that the said John B. Potts died intestate, leaving the said Edward W. Potts his heir at law, and before any division of the said estate, or any settlement thereof; that by the death of the said John B. Potts, the said Edward W. Potts became also the sole executor of the said will, and took possession of the said estate, and thereby became liable to pay to

the said Catharine R. Potts the legacy of three thousand five hundred dollars, bequeathed to her by the said will.

That on or about the twenty-seventh day of October, A. D. eighteen hundred and thirty, the said Edward W. Potts, as executor as aforesaid, having made to the said Catharine R. Potts several small payments, at different times, on account of her said legacy, gave her a certificate or statement in writing, in the following words, to wit:—" There is now due to Catharine R. Potts, from the estate of John Potts, deceased, two thousand eight. hundred and six dollars and fifty cents, being the balance of legacy left by the deceased, and now unpaid—the interest having been paid up to this date.   October 29, 1830.

$ 2806 50.        E. W. POTTS, Ex'r of John Potts, dec'd."

That the said Edward W. Potts died sometime about the month of May, A. D. eighteen hundred and thirty-one, intestate, and without issue, and without having settled the accounts of his executorship, and without having paid the balance of the said legacy, leaving William Potts, his uncle on his father's side, his heir at law.   That the said William Potts and Aaron P. Wright obtained letters of administration of the personal estate of the said Edward W. Potts, and took possession of the same, including the assets in the hands of the said Edward W. Potts at the time of his death, as surviving executor of his father, John Potts, deceased; and that the said William Potts also took possession of all the real estate devised by the will of the said John Potts, deceased, as aforesaid, claiming the same as heir at law to the said Edward W. Potts, deceased.

That on the eighth day of March, A. D. eighteen hundred and thirty-two, the said Catharine R. Potts intermarried with Samuel Paxson, whereby he became entitled in right of his said wife, to have the balance of the said legacy remaining due from the estate of the said John Potts, deceased.

That the said William Potts and Aaron P. Wright, administrators of Edward W. Potts, in the term of October, eighteen hundred and thirty-one, of the orphans' court of the county of Hunterdon, obtained an order of the said court, directing the

said administrators to sell so much of the real estate whereof the said Edward W. Potts died seized, as will be sufficient to pay his debts; by virtue whereof they advertised for sale sundry houses and lots of land, being the residue and remainder of the real estate of the said testator in Trenton, which remained unsold, for the payment of the debts of the said Edward W. Potts, deceased.

The bill prays that an account may be taken of the personal estate and effects of the said John Potts, the testator, and also an account of the funeral expenses, debts and legacies; and that, if necessary, so much of the real estate of the said John Potts, deceased, may be sold, as may be proper and expedient to satisfy to the complainants the amount due them on account of the said legacy; and that the said William Potts and Aaron P. Wright be restrained by injunction from selling any part of the real estate of the said John Potts, deceased, for the payment of the debts of the said Edward W. Potts, deceased, by virtue of or under the said order of the orphans' court of the county of Hunterdon; and that the complainants may have such other or further relief as may seem meet, &c.

An answer was filed by the defendants; but as the opinion of the chancellor rests entirely upon the construction of the will, set out in the bill of complaint, the contents of the answer are not material to a full understanding of the case. The cause was heard upon bill, answer, replication and proofs.

*Halsted* and *Wall*, for complainants.

*H. W. Green* and *Southard*, for defendants.

Cases cited for complainants. *Preston on Legacies*, 57; 2 *Atkyns*, 297; *Prec. in Chan.* 397; 1 *Vesey, sen.* 500; 4 *Mad.* 188; *Prec. in Chan.* 430; *Cro. Eliz.* 304, 716, 727; *Cro. Car.* 86; *Brownl.* 74; *Cro. Jac.* 597, 640, 645; 3 *P. W.* 246; 2 *P. W.* 616; 15 *Vesey*, 512; 3 *Atkyns*, 358; *Ram. on Assets*, 42, 43.

[Paxson v. Potts' Adm'rs.]

Cases cited for defendants. 2 *Vesey*, 328; 2 *P. W.* 188; 3 *Atkyns*, 355; 4 *Mad.* 188; 2 *Sim. and S.* 592; (1 *Con. Eng. Cha. R.* 604;) *Bac. Ab. Extinguishment, D.; Yelv.* 38; 8 *Mod.* 328; *Buller's N. P.* 182; 1 *Bay.* 112; 2 *Dyer,* 140, *a.* 39; 2 *John. R.* 473; 2 *Sch. and Lef.* 450; 10 *John. R.* 30; *Clancey,* 224; *Ram. on Assets,* 57; 3 *Con. Eng. Cha. R.* 427.

THE CHANCELLOR. On the twenty-eighth day of June, eighteen hundred and twenty-six, John Potts, late of the city of Trenton, made his last will and testament, duly executed to pass real estate, and therein gave to his wife Catharine, now one of the complainants, in lieu of her dower, a house and lot in Wood-street, in Burlington city, sundry articles of furniture, and the sum of three thousand five hundred dollars. He then gave to his sister and niece the money that should accrue from the unsettled estate of his father, Richard Potts, deceased; and then added the following clause:—" To my two sons, John B. Potts and Edward W. Potts, of the state of Louisiana, and to their heirs and assigns for ever, I do give and bequeath the whole of my real and personal estate, excepting only the portions mentioned in the second and third items of this my will; to be equally divided between them at such time as they or either of them shall think it his or their interest to divide the same."

John B. Potts and Edward W. Potts were named as executors. John B. Potts died after the decease of his father, without having proved the will, and without being married or having issue—whereby all his interest descended to his brother, Edward W. Potts, who thereby became sole executor, and took possession of all the real and personal estate.

The complainants charge in their bill, that the widow made frequent applications to the said Edward W. Potts for payment of the legacy. That he at one time prepared and offered to give to her his bond to secure the payment of the legacy; that he executed one and gave it to her; that she was not satisfied with it, there being no security, and they agreed to put an end to the

proposed arrangement and entirely to rescind and annul the same, which was accordingly done, and the bond was taken back and cancelled. On the twenty-seventh of October, eighteen hundred and thirty, the said Edward made a calculation of what was due on the legacy, and gave her a certificate in the following words:—" There is now due to Catharine R. Potts, from the estate of John Potts, deceased, two thousand eight hundred and six dollars and fifty cents, being the balance of legacy left by the deceased and now unpaid—the interest having been paid up to this date. October 29, 1830.

$ 2806 50.          E. W. Potts, Ex'r of John Potts, dec'd."
Which sum or balance of legacy is still unpaid.

In June, eighteen hundred and thirty-one, Edward W. Potts died intestate, and without issue, leaving William Potts, his uncle, his heir at law and next of kin; who, together with Aaron P. Wright, took out letters of administration upon his estate, and of the assets of the estate of John Potts, deceased, and William Potts also took possession of all the real estate, as heir at law.

The bill then charges, that the said real estate is charged with the balance of the legacy due to the widow, who has recently intermarried with Samuel Paxson, the complainant; that a valuable part of the property has recently been sold by the sheriff, under an execution against Edward W. Potts, for his own debt, and not for the debt of his father, at a great under value, and purchased in by the said William Potts; and that the said administrators are now seeking to sell other parts of said real estate, under a pretended order of the orphans' court of the county of Hunterdon, for the payment of the debts of the said Edward W. Potts.

The bill prays an injunction to prevent the sale; also, an account, and that the legacy, or such part of it as may not be paid out of the personal estate, may be decreed to be a charge on the land, and be satisfied thereout.

The answer of the defendants is of great length. It sets up, among other things, that the personal property of the testator

was greatly reduced by bad debts and heavy losses, and was altogether insufficient to pay his just debts, and would have been so under the best management. It alleges, also, that the bond given by Edward W. Potts to Catharine R. Potts, the widow, for the amount due on her legacy, was received by her in full satisfaction and discharge thereof; that payments were made on it on account of interest, and that interest was paid on it up to the first of November, eighteen hundred and twenty-eight; that it was held by the widow nearly three years, and was not delivered up until the twenty-seventh of October, eighteen hundred and thirty, after repeated payments of interest had been made upon it, nor until Edward W. Potts had become greatly indebted and embarrassed in his circumstances, and she had become apprehensive of his insolvency ; that the object of doing it at that time was to transfer this debt, now being an individual debt of the said Edward, to the estate of John Potts, deceased, and make the same a charge upon the estate—which they could not lawfully do.

The answer denies that the premises, or any part of them, were sold for an under value. Some of the real estate was sold at sheriff's sale, to satisfy a debt to the Brearleys ; but it was a debt of John Potts, which Edward had bound himself to pay, and the property sold for as fair a price as property generally does at sheriff's sale. It admits that an order for sale of the real estate of Edward W. Potts, deceased, was obtained, and they are going on to sale, as the estate of Edward is insolvent, and will not pay his just debts. It insists that the legacy was never a charge upon the land, or if it was, the taking of the bond for the amount due, released it ; and that it cannot now be set up as against creditors having lawful liens on the land; but that the complainant must come in with his claim on the same footing as other creditors. The answer then prays, that the injunction may be dissolved, and that the money may be brought into court, to abide its order; and offers to account, &c. under its order.

The whole case rests upon a single point. If the legacy is

not by law a charge on the land, there is an end of the controversy.

Real estate, as was observed by this court in the case of * *Van Winkle* v. *Van Houten et al.* is not naturally or ordinarily the fund out of which legacies are to be paid. They are, as a general rule, to be satisfied out of the personal property. They may, nevertheless, be charged on the land, at the will of the testator. He may charge them on the land and exempt the personal estate. This is not often done, and to effect it there is required an expression of intention so clear as to admit of no reasonable doubt. Or the testator may make the real estate liable for legacies in case his personal property is insufficient to pay them; and this is what is generally meant by charging the land with the payment of legacies. " It may be either by express words or by implication. If by implication, it must be a fair and satisfactory inference that such was the intention of the testator." This intention, the court then held, was to be gathered from the language and dispositions of the will; and these were to be construed, not simply in reference to the particular expressions of the will, but the situation of the property disposed of, and of the persons taking.

In that case, the authorities on the point, and especially the more modern ones, were considered, and the court was of opinion that the decision of the vice-chancellor of England, in the late case of *Parker* v. *Fearnley*, 2 *Sim. and Stu.* 592, (1 *Con. Cha. R.* 604,) in which it was held that the simple expression in the will itself, without reference to any thing else, must govern, was too narrow, and opposed to the whole current of authorities. The decision of the chancellor of New-York in *Lupton* v. *Lupton*, 2 *John. Chan. R.* 614, was also considered. It is there laid down, that the intention of the testator is to be inferred from the language and dispositions of the will. To understand properly the dispositions of a will, which are dependent on the intention of the testator, it is often important to know something of the property devised, or the person to whom it is

* See ante, page 172.

given.  The relationship between the testator and the devisee and legatee, may not appear upon the face of the instrument, and yet, according to many cases, the intention of the testator and the construction of the will may depend on it.   So the fact that there was really no personal property at all, either for the payment of debts or legacies, may go far to settle the intention of the testator in regard to the fund out of which the legacies were to be paid :   *Webb* v. *Webb, Barnard. Rep.* 86 ;  *2 Eq. Ca. Ab.* 504 ;  *Lypet* v. *Carter,* 1 *Vesey, sen.* 499.   With this construction, the law, as laid down in the case of *Lupton* v. *Lupton,* was adopted as the rule of this court.

The circumstances under which the courts of equity have considered legacies charged on real estate, are very various ; and, in the numerous cases which have occurred, there are some not easy to be reconciled.   There are few of those, however, that can apply to the case now under consideration, and it is not deemed necessary to refer to them.

By the will, the lands are not distinctly charged—if chargeable at all, it must be by implication—and the intention of the testator must be gathered from the circumstance that the testator has blended his real and personal estate together, so as to constitute one fund, and, therefore, the legacy must be paid out of that fund : or, from the fact that the devisees are the heirs at law and executors, from which, it is insisted that the testator intended the legacies to be paid, at all events.   But I do not consider this case as being within the principle.   The real and personal estates are not blended by the testator, so as to constitute one common fund, as in the cases where that principle is recognised.  In *Bench* v. *Biles,* 4 *Mad. Rep.* 187, the rule is clearly illustrated.   The testator gives to his wife, for her life, all his real and personal estate—blending  both together, as one common fund, for her use :   He gives certain pecuniary legacies, to be paid after her death, and then the rest, residue and remainder of his real and personal estate, to his nephews.   The court then held that the testator had treated all parts of his estate as one fund :  that he had blended and amalgamated them together, for

the benefit of his wife; that, out of this fund, after her death, the legacies should be paid, and then, that the residue should go to the nephew. But, in this case, the testator nowhere treats the real and personal estate as one fund. He gives a certain specific part of his real estate to his wife in the first place, then specific portions of his personal estate, and then a pecuniary legacy. He also gives legacies to other relatives, to be paid out of particular funds; and, afterwards, gives all the rest, residue and remainder of his estate, real and personal, excepting those legacies, or portions, (as he calls them) to his two sons. That they are united together in the residuary clause, is not sufficient—especially when parts of the real as well as personal estate have been previously given. Such a construction would overturn settled principles and introduce great confusion in this branch of the law. There are cases where a residuary clause of that kind has been held sufficient to charge lands with the payment of legacies; but they go upon the principle that there were no previous devises of the real estate, and that, when the testator gave the residue of the real estate, without having devised any part of it previously, he must have meant the residue after paying the legacies—otherwise, it could not be a residue. The case before me is of a different character, and cannot, by any construction, be brought within that rule.

If the real estate is to be charged, it must be from the circumstance that the devisees are the heirs at law and executors.

There is a class of cases that appear to sustain this principle, and they are entitled to respectful consideration; but, on examination, it will be found that most of them have some other peculiarity, and that, in some of them, the decision has been placed partly on other grounds.

The case of *Alcock* v. *Sparhawk*, in 2 *Vern.* 228, (Raithby's edit.) is one of the oldest. The testator devised his lands to his brother, who was his heir, in fee; gave sundry legacies; and made his brother executor, desiring him to see the will performed, according to the trust and confidence reposed in him. The court held the land charged with the legacies, on two grounds.

The first was, that as the devisee was his heir at law, the testator needed not to have devised the lands, unless he intended to subject them to the payment of the legacies. The second was, that the devisee was also executor, and *was desired to see the will performed*, and upon this the court laid stress. It differs, therefore, in some respects, from the case now before the court. There was also parol evidence admitted, to show that the devisee had agreed to the payment of those legacies when the will was made, but it does not appear that any notice was taken of it by the court.

In *Tompkins* v. *Tompkins*, *Finch's Rep.* 397, the devisee was one of the executors; but there the testator devised the lands to his son, after the payment of debts and legacies—and the court held that it amounted to a charge on the land, since the son, by the will, was not to have the lands till after the debts and legacies were paid. The peculiar distinction in that will is not to be found in the one now under consideration.

The same phraseology is used in *Brudenell* v. *Boughton,* 2 *Atk.* 268; and the devisee was made executor. The court held the land charged.

In *Lypet* v. *Carter,* 1 *Ves. sen.* 499, the devisee was made executor, and the land was considered charged. The court, however, did not appear to place it on that ground, but said that, on the whole case, it seemed to be the testator's intent to provide effectually for every branch of his family; and if that construction did not prevail, his daughter Susan was to go without a provision.

Besides these, there is an American case, not cited at the bar, which favors the doctrine advocated by the complainant. I refer to *Nichols* v. *Postlethwaite,* 2 *Dall.* 131. The testator bequeathed several pecuniary legacies to different persons, and "all the rest and residue of his estate, real and personal," he gave to his son, whom he appointed executor. The court was very clear, that it was a charge on the lands, and that nothing was given to the residuary devisee but what remained after the payment of the legacies. There are two points in that case distinguishing it from

the present one.   The one, that without having devised previously any part of his real estate, he gave the *residue* of it to this devisee.   There is a class of cases in which it is considered that such a disposition implies that part of the real estate may be applied to the payment of legacies, or else the term *residue* is without meaning.   The other point is, that it appeared the testator had no personal estate whatever.   How far these two matters may have influenced the court, cannot be ascertained.

From this review of the cases, it will be seen that the rule is not so firmly established as to render it of very binding authority· There is not a series of decisions distinctly upon the point ; and' as was remarked by this court, in *Van Winkle* v. *Van Houten*, before referred to, the late case of *Parker* and *Fearnley*, 1 *Cond. Eq. Rep.* 604, has somewhat shaken this rule.   The vice chancellor expressly says, he cannot infer that the legacies are to be charged on the land, because the testatrix has directed them to be paid by the executor, he being also the devisee.   He considered it a clear case against the claimant.

Under these circumstances, I feel free to take such course as would rightfully be taken if the executors were strangers.   I do not consider the fact that the executors and devisees are the same, as sufficient, of itself, to charge the land.   It is entitled to some consideration, especially when connected with other facts tending to show the intention of the testator ; notwithstanding, by itself, it would be unsafe to rest upon it.   The great principle that legacies are to be paid out of the personal estate, and that the realty is not to be charged except where the intention of the testator is clear, would be violated.   It is wise to adhere to this rule, and not guess at intentions, for the purpose of carrying out a supposed equity.

There is one other feature in this case which deserves to be noticed.   All that was given by the testator to his widow, was in lieu of dower ; and, having accepted the bounty, it is supposed she has an additional equity on that ground.   When a provision is made, by will, for a wife, and it is given in lieu of dower, she is not bound to accept.   If there be a devise of lands, as in this

[Paxson v. Potts' Adm'rs.]

case, she has six months to determine whether to take the bounty of the husband or the dower at law. She has accepted the provision of the will; and, although part of it may fail, this court cannot say that the residue, consisting of the house and lot in Burlington, is not equal in value to her dower at common law in the whole premises of which her husband died seized. It may be that the provision for the wife was much more valuable than the dower; and, if so, there could be no possible equity in charging it on the land against the devisee. He might be compelled to pay, in this way, double the value of the dower.

The court has no means of knowing or ascertaining the relative value of the dower and the property given in lieu of it; and, on so grave a subject, it would be unsafe to found an equity on mere conjecture, and carry it out to the great injury of third persons.

Upon the whole case, I am satisfied to decree that the pecuniary legacy to the wife is not a charge upon the land devised; and, therefore, that the injunction heretofore granted be dissolved.

Order accordingly.